UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY M. BEYER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:17CV2763 HEA |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

# **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court, pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), authorizing judicial review of the final decision of the Commissioner of Social Security denying Plaintiff's Title II application for Disability Insurance Benefits ("DIB") under 42 U.S.C. §§ 401*et seq.,* and Title XVI application for Supplemental Security Income ("SSI") under 42 U.S.C. §§ 1381 et seq. For the reasons discussed below, the Commissioner's decision is affirmed.

On June 22, 2016 a hearing was conducted by ALJ Christal Key in Creve Coeur, Missouri. Plaintiff appeared in person and with counsel. Also in appearance was Darrell Taylor, a Vocational Expert.

Plaintiff was born on November 10, 1969. She was 46 years old at the time of hearing. Plaintiff has a GED and work training and experience as a beautician. She was 42 years old at the time of onset. Plaintiff suffers from depression, bipolar disorder and anxiety with panic disorder. There is testimony that Plaintiff lives in a single story house with her 13 year old daughter.

Plaintiff testified since she began seeing Dr. Ardekani at 18 she has been taking Wellbutrin (for 10 years), Effexor( for 10 years), Ritalin (for 2 years 2 times a day), Xanax (for 4 years 3 times a day), Temazepam ( for 9 years). She also stated that her symptoms have gotten worse and that the Wellbutrin makes her ears ring. There was also testimony by Plaintiff that she goes grocery shopping about once every three weeks and cooks meals, takes care of her 13 year old daughter, cleans the home, and does laundry.

Next, the Vocational Expert, Darrell Taylor, testified without any objection to his qualifications. Taylor testified as to the past work of Plaintiff as a hair stylist which is light exertional skilled. Further, based upon a proper hypothetical, with limitations of simple routine task and not at a productive rate, with simple work-related decisions there was unskilled medium exertional work available as a dishwasher. The Vocational Expert testified that Plaintiff could perform any of unskilled work as a cleaner and light exertional, unskilled work as an unskilled handpacker.

Mr. Taylor also testified that the work was consistent the DOT and Selected Characteristics of Occupation.

Accordingly, the ALJ held that Plaintiff was not under any disability during her alleged onset date, July 31, 2012. The ALJ found that Plaintiff had severe impairments which included bipolar disorder, panic disorder, post-traumatic stress disorder, and attention deficit disorder.  The ALJ found that she did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. part 404, subpart P, appendix 1. The ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels with certain nonexertional limitations.  Plaintiff is limited to performing simple, routine and repetitive tasks, but not at production rate pace. She is limited to simple work-related decisions she can interact only occasionally with supervisors and only frequently with co-workers and can have only occasional contact with the public.  Consequently, the ALJ found that Plaintiff was not disabled.

On September 20, 2017, the Social Security Appeals Council denied Plaintiff's request for review. Plaintiff has exhausted her administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner subject to judicial review.

**Statement of the Issues**

The general issues in a Social Security case are whether the final decision of the Commissioner is consistent with the Social Security Act, regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. The specific issues in this case are whether there is substantial evidence in support of the ALJ's evaluation of the medical opinions and whether there is substantial evidence in support of the Residual Functional Capacity determination.

As explained below, the Court has considered the entire record in this matter. Because the decision of the Commissioner is supported by substantial evidence, it will be affirmed.

**Standard for Determining Disability**

The standard of review here is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole. *See Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). Substantial evidence is less than preponderance, but enough that a reasonable mind might accept as adequate to support the Commissioner's conclusion. *See id.*

The Court must consider evidence that both supports and detracts from the Commissioner's decision but cannot reverse the decision because substantial evidence also exists in the record that would have supported a contrary outcome, or because it would have decided the case differently. *See Andrews v. Colvin*, 791

F.3d 923, 928 (8th Cir. 2015). If the Court finds that the evidence supports two inconsistent positions and one of those positions represents the Commissioner's findings, the Court must affirm the Commissioner's decision. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015). The Eighth Circuit has stated that "[w]e defer heavily to the findings and conclusions of the Social Security Administration." *Id.* (quoting *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010)).

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir.2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

A five-step regulatory framework is used to determine whether an individual claimant qualifies for disability benefits. 20 C.F.R. §§ 404.1520(a), 416.920(a); see also *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir.2011) (discussing the five-step

process). At Step One, the ALJ determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I); *McCoy*, 648 F.3d at 611. At Step Two, the ALJ determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the ALJ proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the ALJ must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir.2009) (citing 20 C.F.R. § 404.1545(a)(1)); see also 20 C.F.R. §§ 404.1520(e), 416.920(e). At Step Four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past

relevant work. 20 C.F.R. §§ 404.1520(a) (4) (iv), 404.1520(f), 416.920(a) (4) (iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id*. At Step Five, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

**RFC**

A claimant's RFC is the most an individual can do despite the combined effects of all of his or her credible limitations. *See* 20 C.F.R. § 404.1545. An ALJ's RFC finding is based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir.2010); *see also* 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96–8p. An ALJ may discredit a claimant's subjective allegations of disabling symptoms to the extent they are inconsistent with the overall record as a whole, including: the objective medical evidence and medical opinion evidence; the claimant's daily activities; the duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medications and medical treatment; and the

7

claimant's self-imposed restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984); 20 C.F.R. § 404.1529; SSR 96–7p.

A claimant's subjective complaints may not be disregarded solely because the objective medical evidence does not fully support them. The absence of objective medical evidence is just one factor to be considered in evaluating the claimant's credibility and complaints. The ALJ must fully consider all of the evidence presented relating to subjective complaints, including the claimant's prior work record and observations by third parties and treating and examining physicians relating to such matters as:

(1) The claimant's daily activities;

(2) The subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) Any precipitating or aggravating factors;

(4) The dosage, effectiveness, and side effects of any medication; and

(5) The claimant's functional restrictions.

Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir.2001) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir.2001)). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. See *Lauer*, 245 F.3d at 704

(some medical evidence must support the determination of the claimant's RFC); *Casey v. Astrue*, 503 F .3d 687, 697 (the RFC is ultimately a medical question that must find at least some support in the medical evidence in the record). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir.2006).

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the claimant's complaints. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir.2005). "It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence." *Id*. The ALJ, however, "need not explicitly discuss each *Polaski* factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir.2004). The ALJ need only acknowledge and consider those factors. *Id*. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir.1988). The burden of persuasion to prove disability and demonstrate RFC remains on the claimant. *See Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting,

pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

If the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

If the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in

terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

If the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir.

2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related

activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). The Commissioner makes this determination by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. § 416.920a(c)(3).

## Decision of the ALJ

In a decision dated September 1, 2016, the ALJ determined that Plaintiff was not disabled under the Social Security Act. The ALJ acknowledged that the administrative framework required a five-step, sequential process in evaluating Plaintiff's claim. At step one the ALJ concluded that Plaintiff had not engaged in any substantial gainful activity from since July 31, 2012. At step two, the ALJ found Plaintiff had the following severe impairments during the relevant period: bipolar disorder, panic disorder, post-traumatic stress disorder, and attention deficit disorder. At step three the ALJ found that she did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. part 404, subpart P, appendix 1. The ALJ determined that Plaintiff retained

the RFC to perform a full range of work at all exertional levels with certain nonexertional limitations. The limitations included performing simple, routine and repetitive tasks, but not at a production rate pace. They also included being limited to work requiring only simple work-related decisions and interacting only occasionally with supervisors and only frequently with co-workers. There was also limitation to only occasional contact with the public. Due to her distractibility she could be off-task for 10% of the workday.

At step four the ALJ found there were jobs available for Plaintiff in the national economy considering her age, education, work experience, and residual functional capacity. At step five the ALJ found that Plaintiff has not been under a disability as defined in the Social Security Act from July 31, 2012.

**A. Was There Substantial Evidence in Support of The ALJ Evaluation of The Medical Opinions?**

Plaintiff asserts that the ALJ improperly discredited Dr. Ardekani's assertions that Plaintiff was significantly limited and could not work and improperly granted weight to Dr. Morgan's opinion that Plaintiff could perform at least simple, repetitive work on a sustained basis. Additionally, Plaintiff suggests that there is not substantial evidence supportive of the ALJ decision.

The Plaintiff asserted she experienced depression and anxiety that it disabled her and inhibited her ability to work. She noted that she had been treating with Dr. Ardekani since she was 18 years old. Plaintiff places great weight on the findings

and conclusions of Dr. Ardekani in her attempt to invalidate the findings and conclusions of the ALJ. In this regard Plaintiff is misguided. The record is replete with observations and statements by Dr. Ardekani that disrupt, disallow, and belie any conclusion supportive of her claims. As noted by Defendant the record shows from 2011 through 2016 that Plaintiff had a calm or cooperative demeanor, fair to good eye contact, normal psychomotor activity, normal speech, cohesive thoughts, and fair to good insight and judgment , upon her visits to the doctor. The ALJ noted these things were inconsistent with the disabling assertion of Plaintiff. This was a proper exercise of the approach required by the ALJ. In addition the record reflects that the treatment regime for Plaintiff was benign considering the claims of Plaintiff. *See Wright v. Colvin*, 789 F.3d 847, 853 (8th Cir. 2015) ("[C]redibility is primarily a matter for the ALJ to decide. An ALJ . . . may disbelieve subjective reports because of inherent inconsistencies or other circumstances."); 20 C.F.R. § 404.1529(c)(2) (providing that objective medical evidence is a useful indictor in making reasonable conclusions about the intensity and persistence of a claimant's symptoms).

The record fully and substantially supports the finding of the ALJ. The ALJ considered Plaintiff's improvement through treatment by Dr. Ardekani as reflected in his notes regarding her improved appearance and that she was looking better.

Further, the ALJ properly weighed the consistency of her allegations against the treatment she was receiving.

Plaintiff asserted that anxiety and depression were disabling and debilitating. A review of the record shows that she worked 10 hours per week as a hairstylist at a salon and provided childcare for her young grandson for up to 5 hours per day, 3 days per week for 2 years. The defendant is correct that such activities weigh against the disability allegations of the Plaintiff. *See Medhaug v. Astrue,* 578 F.3d 805, 816 (8th Cir. 2009)("[W]orking generally demonstrates an ability to perform substantial gainful activity."). Additionally, Plaintiff attended church nearly every Sunday, she denied problems getting along with authority figures, and had never been fired from a job due to an inability to get along with others (Tr. 16, 375). While Plaintiff alleged a disabling inability to sustain tasks due to depression and anxiety, Plaintiff admitted that she could "mostly" finish what she starts and could follow written and spoken instructions well (Tr. 17, 375). The ALJ reasonably concluded that Plaintiff's relatively extensive daily activities and admitted abilities were inconsistent with her allegations of disabling depression and anxiety (Tr. 16-17).

State agency psychologist Dr. Morgan opined that Plaintiff could perform work involving simple, repetitive tasks on a sustained basis. The record reflects that the ALJ rightly considered that the doctor's opinion deserved weight due to

Dr. Morgan's evaluation of the evidence in the file regarding the point. An ALJ considers the medical opinions together with the rest of the relevant evidence in determining disability. *See* 20 C.F.R. §§ 404.1527, 416.927. The ALJ has the task of determining the weight to be afforded each opinion. *See Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008) ("The ALJ is charged with the responsibility of resolving conflicts among medical opinions."). In consideration of the state agency psychologist it is appropriate for the ALJ to grant it weight. *See Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) ("The state agency physicians' opinions were consistent with the other medical evidence and it was proper for the ALJ to rely on them, in part, in formulating Mabry's RFC."). The ALJ acted properly.

The record clearly supports the minimal weight the ALJ gave to the opinion of Dr. Ardekani's assessment of marked limitations in mental functioning and statement that Plaintiff could not work. Ardekani's opinion conflicted with treatment notes in the record. The record relating to treatment notes stated that Plaintiff had a calm or cooperative demeanor, fair to good eye contact, normal psychomotor activity, normal speech, cohesive thoughts, and fair to good insight and judgment (Tr. 17, 437, 439, 443, 446-47, 454, 456, 458, 464, 468, 503, 505, 507, 515, 517, 519, 521, 523, 525, 527, 529). The notes also did not reflect Plaintiff suffered from any psychosis or other symptoms requiring more aggressive treatment. *See Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (providing that

17

an ALJ may properly discount a treating physician's opinion when it was inconsistent with the doctor's own treatment notes).

Dr. Ardekani provided an opinion, or assessment, of only moderate limitations in his June 2016 questionnaire but stated that Plaintiff was "not capable [of] working" and had a GAF score of 40 (Tr. 17, 512-13). As defendant correctly observes, the ALJ reasonably considered an apparent internal inconsistency in the doctor's opinions in granting them only minimal weight (Tr. 17, 475-76, 512-13). *See Myers v. Colvin*, 721 F.3d 521, 525 (8th Cir. 2013) (An ALJ may discount a treating physician's opinions where those opinions were internally inconsistent, among other reasons.). The ALJ provided solid reasons supported by substantial evidence for discrediting Dr. Ardekani's assessment of marked limitations and his statements that Plaintiff could not work; the ALJ properly weighed Dr. Ardekani's opinions (Tr. 17, 475-76, 512-13). *See Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014) ("'It is the function of the [ALJ] to weigh conflicting evidence and to resolve disagreements among physicians.'") (quoting *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007)).

**B. Is the Residual Function Capacity Supported by Substantial Evidence in The Record Vis-a-Vis Medical Evidence?**

Plaintiff argues that the RFC is defective because it is not reflective of a medical opinion. It is greatly noteworthy that "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley*, 829 F.3d at 932

(citing *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) and *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012)). Furthermore, "in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively . . . . Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.'" *Lockwood*, 627 F. App'x at 577 (quoting *Cox v. Astrue*, 495 F.3d 614, 619–20 (8th Cir.2007)).

Here, the entirety of the record demonstrates that the ALJ considered the evidence available in arriving at the appropriate RFC for the Plaintiff. The ALJ properly reached her RFC finding and determined that Plaintiff could perform work existing in significant numbers in the national economy, including the jobs of cleaner and housekeeper. Plaintiff, however, argues that the ALJ failed to consider evidence from Dr. Ardekani which was supportive of the existence of greater functional limitations. The conclusions of the ALJ must remain untouched as they are supported by substantial evidence. *See Milam*, 794 F.3d at 983

**Conclusion**

The ALJ decision is supported by substantial evidence on the record as a whole. The ALJ's decision will not be reversed for the reasons set forth in this Opinion, Memorandum and Order. The decision of the ALJ denying Plaintiff's claims for benefits is affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment in accordance with this Memorandum and Order is entered this same date

Dated this 12th day of February, 2019.

                                                  _____
                                                  HENRY EDWARD AUTREY
                                              UNITED STATES DISTRICT JUDGE